```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                      EASTERN DISTRICT OF VIRGINIA

                           Alexandria Division

ROBERT GOTTLIEB and              )
LOIS GOTTLIEB,                   )
                                 )
         Plaintiffs,             )
                                 )           1:05cv1184(JCC)
         v.                      )
                                 )
J. TIMOTHY HALL,                 )
                                 )
         Defendant.              )
```

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on the parties' cross-motions for summary judgment. For the following reasons, the Court will deny Plaintiffs' motion and grant Defendant's motion.

### I.   Background

Plaintiffs, Robert and Lois Gottlieb, filed this diversity of citizenship action against Defendant, J. Timothy Hall, seeking the repayment of a loan. The loan at issue was paid by a check dated September 22, 2003. The check was made payable to "DesignTech Int'l," was drawn on the account of "Robert S. Gottlieb & Lois D. Gottlieb ttees Gottlieb Family Trust," and was signed by Robert Gottlieb. (Def.'s Mot. Ex. 1.) A separate letter addressed to Mark Gottlieb, Plaintiffs' son, accompanied the check, the text of which is as follows:

> Dear Mark:
>
> Enclosed is the check for $250,000. Mom and I are happy to help you out for this short term 1-month loan, to be repaid on or before November 1st 2003 w. interest at rate of 5%.
>
> We are impressed with the changes that are taking place at Design Tech and hope everything works out for the best.

(*Id.*)

DesignTech International ("DesignTech"), the designated payee of Plaintiffs' check, is a company in which Plaintiffs' son, Mark Gottlieb, was the majority shareholder and president, and in which Defendant was Chief Operating Officer and a minority shareholder. DesignTech confirmed the terms of Plaintiffs' loan with the following letter, dated September 25, 2003:

> Dear Robert & Lois,
>
> Thank you so very much for the one-month loan on the $250,000 that we deposited this morning. We will be paying you interest at an annual rate of 5%. Our plan is to pay this back by the end of October.
>
> Thank you again for your support.
>
> Sincerely,
>
> _____/s/_____              _____/s/_____
> Mark Gottlieb - President       Tim Hall - Chief
>                                 Operating Officer

(Def.'s Mot. Ex. 2.) The letter was printed on DesignTech stationary. On October 31, 2003, DesignTech issued a memorandum to Plaintiffs, this time memorializing a change in the terms of the loan:

```
TO: Robert & Lois Gottlieb

FROM: Mark Gottlieb & Tim Hall of DesignTech
      International, Inc.

We wanted to thank you for extending your $250,000 loan
that you gave to us September 25, 2003.  It is our plan
to pay you back in full by January 31st, 2004.  We will
be paying you at an annualized 12% rate (1% per month)
starting November 1st at the end of each month for the
use of your money.  The previous 5 weeks were at a 5%
rate.

DesignTech is guaranteeing this loan.  Should there
ever be an issue, both Mark and Tim together (and
separately) will be guaranteeing this loan.

Thanks again.

Sincerely,

      /s/                              /s/
Mark Gottlieb - President       Tim Hall - COO
& CEO
```

(Def.'s Mot. Ex. 3.)  This memorandum was drafted by Mark Gottlieb and also printed on DesignTech's company stationary.  It is undisputed that Mark Gottlieb drafted the October 31, 2003 memorandum.

On October 12, 2005, Plaintiffs filed this action to recover from Defendant the amount due under the loan. Plaintiffs' claim is stated entirely within paragraph five of their complaint:

> Defendant owes plaintiffs Two Hundred and Fifty
> Thousand Dollars ($250,000.00)[1] with interest thereon

---

[1] According to Plaintiffs, the amount presently due under the loan is $222,000, plus interest for the months of February and March 2006.  (See Pl.'s Opp. at 3.)

>    at the rate of twelve (12%) percent per annum for money
>    lent by plaintiffs to defendant on September 25, 2003.

(Compl. ¶ 5.)  The parties have filed cross-motions for summary judgment on Plaintiffs' claim.  These motions are currently before the Court.

## II.  Standard of Review

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party.  *See id.*  In other words, summary judgment appropriately lies only if there can be but one

reasonable conclusion as to the verdict.  *See id.*  As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

### III.  Analysis

As paragraph five of Plaintiffs' complaint amply demonstrates, Plaintiffs have sued on a theory that Defendant was the principal debtor of their loan.  *See* Compl. ¶ 5 (claiming $250,000 "for money lent by plaintiffs to defendant on September 25, 2003").[2]  Despite this fact, Plaintiffs now seek to proceed on both of the alternative theories that Defendant was a principal debtor and that Defendant was a guarantor of the loan. The Court needs not indulge Plaintiffs on their attempt to now proceed on alternative theories because, as will be discussed below, both theories are substantively meritless.

---

[2] Furthermore, in their answers to Defendant's interrogatories, Plaintiffs stated that they were not proceeding on the theory that Defendant was a guarantor/surety of the loan.

Plaintiffs first argue that Defendant's signatures on the September 25, 2003 and October 31, 2003 documents show that Defendant intended to be bound as the principal debtor. Plaintiffs primarily rely on the following commentary to the Restatement of Agency: "If the agent merely adds the word "agent" to his signature in a document, not otherwise manifesting that he is not a party, it is inferred that he is a party to the transaction with the third person . . . ." Restatement (Second) of Agency § 156 cmt. b (1958). Plaintiffs contend that, at the very least, the capacity in which Defendant signed is ambiguous and that parole evidence demonstrates Defendant's intent to be bound as the principal debtor.

The Court disagrees. The common law rule in Virginia is that "[u]nless the facts show otherwise, a contractual instrument should be 'interpreted as the instrument of the principal and not of the agent if, in the signature or description of the parties, the name of the principal and agent both appear, the agent indicating his agency.'" *Newman v. Newman*, 593 S.E.2d 533, 538 (Va. Ct. App. 2004) (quoting Restatement (Second) of Agency § 156 (1958)). Ordinarily, all that is necessary for an agent to prevent himself from becoming a party to the instrument is that the agent make clear in one portion of the instrument that he is acting solely in a representative capacity. *See* Restatement (Second) of Agency

§ 157 cmt. a (1958). If the agent has made his representative capacity clear "in any portion of the instrument, the fact that it is not equally clear in other parts is immaterial, and it is not necessary that he should constantly appear throughout the instrument to act only as a representative." *Id.*

In this case, it is most pertinent that Defendant's signature line bore the description "Chief Operating Officer" in the September 25, 2003 letter and "COO" in the October 31, 2003 memorandum. The Commentary to the Restatement provides that

> [t]he word "president" or "cashier" in a description of the parties or in a signature of an instrument has substantially the same effect as the word "agent" in determining who are parties thereto; also of the same significance are other similar words describing the holding of an office in a corporation or other group by one who, in performing the duties of his office, ordinarily acts as an agent.

Restatement (Second) of Agency § 156 cmt. c (1958). The fact that Defendant was signing in his capacity as an agent of DesignTech is clear from other portions of the instruments as well. Both instruments were printed on DesignTech company stationary. The October 31, 2003 memorandum stated that it was from "Mark Gottlieb & Tim Hall of DesignTech International, Inc." (Def.'s Mot. Ex. 3.)

Accordingly, the agreements unambiguously show that Defendant signed in his capacity as an agent. The Court therefore will not consider the parole evidence cited by Plaintiffs as additional evidence of the parties' intent. *See*

*Golding v. Floyd*, 539 S.E.2d 735, 737 (Va. 2001) ("[I]f the intent of the parties can be determined from the language they employ in their contract, parol evidence respecting their intent is inadmissible."). As Defendant signed only in his capacity as an agent of DesignTech, he is not bound as a principal debtor.

Plaintiffs' alternative argument is that Defendant agreed to guarantee the loan. The Virginia statute of frauds requires dismissal of a claim that "charge[s] any person upon a promise to answer for the debt, default, or misdoings of another," unless that promise is contained in writing and signed by the party to be charged. Va. Code § 11-2(4). The essential terms of the guarantee "must be obvious on the face of the writing without recourse to parole evidence." *Janus v. Sproul*, 458 S.E.2d 300, 301 (Va. 1995). Thus, Plaintiffs' claim that Defendant agreed to guarantee the loan may only be based on the following language: "DesignTech is guaranteeing this loan. Should there ever be an issue, both Mark and Tim together (and separately) will be guaranteeing this loan." (Def.'s Mot. Ex. 3.)

The phrase "Mark and Tim together (and separately) *will be* guaranteeing this loan," *id.* (emphasis added), seems to establish a mere agreement to make a future agreement.[3] This is

---

[3] Defendant argues that because Mark Gottlieb drafted the memorandum, the ambiguous language contained therein should be construed against Plaintiffs. *See Martin & Martin, Inc. v. Bradley Enter., Inc.*, 504 S.E.2d 849, 851 (Va. 1989) ("In the event of an ambiguity in the written contract, such ambiguity

especially the case in light of the contrast between this language and the language of present obligation pertaining to DesignTech's guarantee.  As such, the Court will not construe the language to give rise to a present agreement on Defendant's part to guarantee the loan extended to DesignTech.  As a mere agreement to make a future agreement to guarantee the loan, the guarantee language is unenforceable under Virginia law.  *See Kay v. Prof'l Realty Corp.*, 281 S.E.2d 820, 822 (Va. 1981) (holding that an agreement to agree upon a settlement at a later date was unenforceable).

In sum, the September 25, 2003 letter and October 31, 2003 memorandum unambiguously demonstrate that DesignTech was the only principal debtor on the loan and that Mark Gottlieb and Defendant signed only in their capacities as agents of DesignTech.  Furthermore, Defendant never entered into an enforceable agreement to guarantee the loan made to DesignTech.  Accordingly, the Court finds that summary judgment in favor of Defendant is appropriate.

---

must be construed against the drafter of the agreement.").  Although Mark Gottlieb is not a party to this action, it would clearly be inappropriate to construe against Defendant ambiguous language in an agreement drafted by Mark Gottlieb.  The Court notes that Mark Gottlieb is Plaintiffs' son and that Plaintiffs have not attempted to recover the allegedly guaranteed funds from him.

### **IV.   Conclusion**

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment and deny Plaintiffs' motion for summary judgment.  An appropriate Order will issue.


May 19, 2006                                    _____/s/_____
Alexandria, Virginia                                  James C. Cacheris
                                            UNITED STATES DISTRICT COURT JUDGE